UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Edmond J. Ford, Trustee**

    **v.**     Case No. 06-cv-97-PB
           Opinion No. 2006 DNH 100
**Donna Skorich**


### MEMORANDUM AND ORDER

Edmond J. Ford, chapter 7 trustee ("the Trustee"), commenced an adversary proceeding against Donna Skorich ("Skorich"), former spouse of the debtor J. Gregory Skorich ("the debtor"). The Trustee seeks to avoid an alleged preferential transfer of proceeds from the sale of the couple's jointly-owned property into escrow during their divorce proceedings. On cross-motions for summary judgment, the bankruptcy court refused to avoid the alleged transfer. This appeal followed. For the reasons set forth below, I affirm the bankruptcy court's decision.


### I.  BACKGROUND[1]

Skorich instituted a divorce proceeding against the debtor in Portsmouth Family Court in May 2003. At the commencement of

---

[1] The undisputed facts are set forth in In re Skorich, 332 B.R. 77 (Bankr. D.N.H. 2005) ("Skorich I") and Ford v. Skorich, 337 B.R. 441 (Bankr. D.N.H. 2006) ("Skorich II").

the divorce proceedings, the Family Court issued a restraining order pursuant to N.H. Rev. Stat. Ann. ("RSA") § 458:16, which prevented either party from disposing of any marital property, whether owned jointly or individually by either party.  Def.'s Addendum Ex. 9 ("Divorce Decree") at 6.  On June 24, 2004, Skorich and the debtor sold their jointly-owned second home in Rangeley, Maine (the "Rangeley property") and, pursuant to the Family Court's direction, placed the sale proceeds in an escrow account under the joint control of their divorce attorneys.[2]  See Def.'s Addendum Ex. 5 (Marital Court order dated July 1, 2004). The debtor filed a chapter 7 bankruptcy petition on July 9, 2004.[3]  The bankruptcy court subsequently granted Skorich relief from the automatic stay to proceed with the divorce proceedings, but required her to return to the bankruptcy court to enforce any resulting property division.[4]

---

[2] The debtor's divorce attorney later withdrew from the case and resigned as an escrow agent, at which time the Family Court ordered Skorich's attorney to serve as the sole escrow agent. Divorce Decree at 15.

[3] Skorich's business, Skorich Enterprises, Inc., also filed a chapter 7 bankruptcy petition in December 2004.

[4] The Trustee also appeared as a party in the divorce proceedings.

On March 30, 2005, the Family Court issued a final divorce decree that awarded most of the marital assets to Skorich, including the debtor's share of the escrow funds totaling $147,684.21. The Family Court found that since the commencement of the divorce proceedings, the debtor had "spent and squandered thousands of dollars in violation of the financial Restraining Orders issued," "concealed . . . and diverted assets," "spent lavishly on himself" and "abandoned his thriving business." Divorce Decree at 1. In awarding a disproportionate share of the marital estate to Skorich, the Family Court observed that "Donna Skorich should be restored to the position which she would have been in had [the debtor] not misapplied marital assets to his own use in disobedience of this Court's preliminary injunction and interim orders – a pattern of misconduct that commenced well before [he] filed for bankruptcy." Id. at 6.

Skorich filed a motion in the bankruptcy court shortly thereafter to enforce the final decree. The bankruptcy court ruled that legal title to the sale proceeds had passed from the debtor and Skorich to their attorneys when the funds were placed in escrow. Skorich I, 332 B.R. at 87. Accordingly, the escrow funds did not pass into the debtor's bankruptcy estate upon the filing of his bankruptcy petition and they were not subject to

administration by the Trustee.[5]  Id.

The Trustee then commenced an adversary proceeding against Skorich to recover the escrow funds as a preferential transfer under 11 U.S.C. § 547(b).  Section 547(b) allows the Trustee to avoid a transfer of a debtor's interest in property if, among other things, the transfer was "to or for the benefit of a creditor" and the transfer was "for or on account of an antecedent debt owed by the debtor before such transfer was made."  On cross-motions for summary judgment, the bankruptcy court held that Skorich was not a "creditor" because she did not have a "claim" against the bankruptcy estate or the debtor's interest in the sale proceeds at the time that they were transferred into escrow.  Skorich II, 337 B.R. at 447.  The bankruptcy court also found that the transfer of the sale proceeds into escrow "was not on account of a debt, antecedent or otherwise."  Id.  Accordingly, the bankruptcy court granted summary judgment to Skorich because the transfer could not be avoided as a preference under § 547(b).

---

[5] Although the bankruptcy court correctly found that the debtor did not have legal title to the escrow funds, any equitable interest that the debtor retained by virtue of New Hampshire divorce law would have passed to the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1).

## II. **STANDARD OF REVIEW**

I review de novo the bankruptcy court's grant of summary judgment. Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st Cir. 1994). The summary judgment standard under Federal Rule of Civil Procedure 56 applies to bankruptcy adversary proceedings. Fed. R. Bankr. P. 7056. Accordingly, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Group, Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

## III. **ANALYSIS**

Section 547(b) of the Bankruptcy Code allows a trustee to avoid certain transfers of assets that are considered "preferential" to a particular creditor. A preference action serves two purposes:

> First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. . . .  Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor.  Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally.

H.R.Rep. No. 95-595, at 177-78 (1977), reprinted in 1978 U.S.C.C.A.N. 5963.  To avoid a particular transfer, the trustee must show that it was made:

    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before the transfer was made;
    (3) while the debtor was insolvent;
    (4) on or within 90 days before the filing of the bankruptcy petition; and
    (5) that the preferential transfer enabled the creditor to receive more than he or she would have received in the Chapter 7 proceeding.

11 U.S.C. § 547(b).

    The issues on appeal are whether the transfer of the Rangeley property sale proceeds into escrow was made both "to or for the benefit of a creditor" and "for or on account of an antecedent debt owed by the debtor."  To resolve these issues, I must interpret and apply the statutory terms "creditor" and "antecedent debt."  Although the meaning of these terms presents a question of federal law, I look to state law to determine how

they apply to the facts of the present case.  See <u>In re Ogden</u>, 314 F.3d 1190, 1200 (10th Cir. 2002) (citing <u>Raleigh v. Ill. Dept. of Revenue</u>, 530 U.S. 15, 20 (2000)).

    Under the Bankruptcy Code, a "creditor" includes any person who has a pre-petition claim against the debtor.  11 U.S.C. § 101(10) (2004).  A "claim" is a:

>(A) <u>right to payment</u>, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
>(B) <u>right to equitable remedy for breach of performance if such breach gives rise to a right to payment</u>, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

<u>Id.</u> § 101(5) (emphasis added).  The Bankruptcy Code defines "debt" as "liability on a claim."  <u>Id.</u> § 101(12).  "A debt is 'antecedent' for purposes of § 547(b) if it was incurred before the alleged preferential transfer."  <u>Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba, Inc.)</u>, 416 F.3d 394, 399 (5th Cir. 2005).  Accordingly, Skorich was not a "creditor" and the transfer in question was not "for or on account of an antecedent debt" unless Skorich had a "right to enforce a legal

obligation of payment against the debtor."[6]  Fezler v. Davis (In re Davis), 194 F.3d 570, 577 (5th Cir. 1999).

The Trustee argues that Skorich's right to an equitable division of the marital estate gave her a contingent "right to payment" from the debtor.  I disagree.  Under New Hampshire law, all property held by either party in a marriage is subject to redistribution in a divorce action.  Bursey v. Town of Hudson, 143 N.H. 42, 45 (1998).  Once a divorce petition is filed and a temporary order is issued pursuant to RSA § 458:16, both spouses acquire an undetermined equitable interest in all marital property that persists until the property is distributed in a final property settlement.  Id.  This interest does not depend on one party having a right to payment from the other as that term is ordinarily understood.  Instead, it is a property right that

---

[6]  The Trustee also argues that Skorich had a "right to an equitable remedy" for breach of performance that could have given rise to a right to payment if the debtor had breached his obligation to transfer property to Skorich.  Trustee's Br. at 13. This argument fails because the distribution of property in a divorce proceeding is not awarded as payment for a spouse's "breach of performance," but instead results from the court's equitable division of the marital estate.  See Roost v. Wilber (In re Parker), 241 B.R. 722, 725 (Bankr. D. Or. 1999) ("The division of marital property is not intended as satisfaction of any claims, or to remedy breaches of prior duties."); accord Compagnone v. Compagnone (In re Compagnone), 239 B.R. 841, 845 (Bankr. D. Mass. 1999).

each party has in marital property by virtue of New Hampshire divorce law.  Accordingly, when the divorce court directed Skorich and the debtor to place the Rangeley property proceeds into escrow, it did so to protect their as yet undetermined equitable interests in the proceeds rather than to secure a right to payment that one spouse had against the other.[7]

Furthermore, the concerns that generally give rise to a preference action are not present here because the interests of the debtor's unsecured creditors were protected throughout the proceedings below.  Under New Hampshire law, the debtor retained an equitable interest in the escrow funds, see Bursey, 143 N.H. at 45, which became part of the bankruptcy estate pursuant to 11

---

[7] Even if Skorich's interest in protecting her share of the Rangeley property proceeds from misappropriation by the debtor might in some circumstances be considered a right to payment, that right was simply too speculative to qualify as a right to payment under the Bankruptcy Code.  See Compagnone, 239 B.R. at 843-44 ("'At some point . . . a right to payment becomes so contingent that it cannot fairly be deemed a right to payment at all.'") (quoting In re CD Realty Partners, 205 B.R. 651, 656 (Bankr. D. Mass. 1997)); see also Nelson v. Miller (In Re Miller), 268 B.R. 826, 830 (Bankr. N.D. Ind. 2001) (recognizing majority rule that state divorce laws governing the division of marital assets do not give rise to a "right to payment" until a divorce decree issues).  But see In re Emelity, 251 B.R. 151, 156-57 (Bankr. S.D. Cal. 2000) (holding that former spouse's claim to $10,000 equalization payment from debtor arose pre-petition because "it was within the fair contemplation of the parties that a contingent claim regarding the property division existed at the time of Debtor's bankruptcy filing").

U.S.C. § 541(a)(1).  As the creditors' representative and a successor to this equitable interest, the Trustee had a full and fair opportunity to advocate for the creditors' interests in both the bankruptcy and divorce proceedings.  The Trustee thus could have asked the bankruptcy court to deny Skorich relief from the automatic stay to continue with the divorce proceedings if he thought that she would obtain an unfair advantage over other creditors.  The Trustee also appeared in the divorce action and had an additional opportunity to argue against the Family Court's distribution of the marital estate when Skorich sought permission from the bankruptcy court to enforce the Divorce Decree.  Thus, avoidance of the transfer at issue here is not necessary to serve the purposes of the preference statute.

### IV.  CONCLUSION

The judgment of the Bankruptcy Court is affirmed.

SO ORDERED.

/s/Paul Barbadoro  
Paul Barbadoro  
United States District Judge

August 29, 2006

cc:  Edmond J. Ford, Esq.  
     Marc W. McDonald, Esq.  
     Eleanor Wm. Dahar, Esq.

-10-

US Bankruptcy Court-NH, Clerk
Geraldine L. Karonis, US Trustee